UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GERALD JOSEPH FLATTMANN III,

                                        Plaintiff,


v.                                                          1:25-cv-1538
                                                            (AJB/TWD)



GERALD JOSEPH FLATTMANN JR.,

                                        Defendant.
_____

APPEARANCES:

GERALD JOSEPH FLATTMANN III
*Plaintiff, pro se*
86 Freeman Avery Rd.
Olivebridge, NY 12461

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### REPORT-RECOMMENDATION AND ORDER

## I.     INTRODUCTION

        The Clerk has sent to the Court for review a complaint, Dkt. No. 1, and amended

complaint, Dkt. No. 9, submitted by *pro se* plaintiff Gerald Joseph Flattmann III ("Plaintiff").

Plaintiff also seeks leave to proceed *in forma pauperis* ("IFP").  *See* Dkt. Nos. 2, 3.

## II.     IFP APPLICATION

        Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt.

No. 3.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See id*.  Therefore,

he is granted permission to proceed IFP.[1]

_____

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he
may incur in this action, including copying and/or witness fees.

## III.    BACKGROUND

Plaintiff commenced this action by filing a complaint on October 31, 2025, *see generally*, Dkt. No. 1,[2] and subsequently filed an amended complaint on January 6, 2026, *see generally*, Dkt. No. 9.  The amended complaint lists one Defendant, Gerald J Flattmann, Jr.  *See* Dkt. No. 9 at 2.  Plaintiff identified 18 U.S.C. §§ 1344 and 1348 as the basis for this Court's jurisdiction. *See id*. at 3.  Plaintiff avers he seeks to proceed against the Defendant

> under federal statute 18 USC 1344 for bank fraud and 18 USC 1348 for securities and commodities fraud.  I'm suing him for taking money out of my chase account.  He did this by lying to a bank employee at another bank, Wells Fargo.  I'm also suing him under 18 USC 1348 for stock fraud, for selling stocks that were in a fidelity investments account that was in my name that would be worth at least a million at this point if he never touched the money in the account because of exponential growth in the stock market.  The money in his stock accounts is mostly untouched I believe.  I would anticipate that his legal argument will be centered around his property rights ownership to the money in the account.  my name was on it.

*Id*. at 4 (spacing altered).  With respect to relief, Plaintiff states:

> I am requesting the court to give me $10,000,000 from the defendant for committing these serious federal crimes against me because my father is a multi millionaire who makes several millions of dollars per year at the prestigious NYC big law firm he works for with his Yale and Harvard law degrees.  He'll never give me a penny.  I've know[n] since I was a child that he was making millions of dollars per year.  He has a law office at Cahil Gordon & Reindel LLP 32 Old Slip New York NY 10005 I couldn't even pay for my food or housing because of what he did.  I struggled for years and am still struggling financially.  I also suffer from chronic physical pain. He's been a millio[]naire for almost 30 years.  its time to pass on the baton. His corrupted and immoral legal arguments are very compelling and far better than mine.  I have never sued anyone before.  hes a professional litigator.

---

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

*Id*. (spacing altered).[3]  The Defendant's address is identified as a location in Manhattan, New York.  *See id*. at 2.

## IV.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure.  *See*, *e.g.*, *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2

---

[3] The undersigned notes, it appears an additional line of text may have been cut off from the bottom of the fourth page of Plaintiff's amended complaint.

(N.D.N.Y. Nov. 21, 2024) (explaining, "special solicitude for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure . . . .") (internal quotations and citation omitted), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution.  A court may exert subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States" and civil actions where there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.  28 U.S.C. §§ 1331, 1332.  In the absence of a basis for exercising jurisdiction, the case must be dismissed. Fed. R. Civ. P. 12(h)(3); *United States v. Cotton*, 535 U.S. 625, 630 (2002); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'") (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)) (additional citations omitted).  "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*."  *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

Here, Plaintiff has failed to allege a federal claim such that the Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 may be invoked.  *See generally*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (the plaintiff bears the burden of establishing subject matter jurisdiction).  As previously stated, Plaintiff purports to bring claims pursuant to 18 U.S.C. §§ 1344 and 1348.  *See* Dkt. No. 9 at 3.  However, "a private plaintiff cannot pursue a claim under the criminal statutes found in Title 18 of the United States Code."  *Bennett v. New York State Thruway Auth.*, No. 6:22-CV-337, 2024 WL 1053222, at *17 (N.D.N.Y. Mar. 11, 2024); *see also*, *e.g.*, *Gidea v. Owego Police Dep't*, No. 3:25-CV-0103 (ECC/ML), 2025 WL 3640706, at *4 (N.D.N.Y. Dec. 16, 2025).  "It is a truism, and has been for many decades, that in

our federal system crimes are always prosecuted by the Federal Government, not . . . by private complaints." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972); *see also*, *e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (explaining, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (explaining, there is no private right of action under Title 18 of the U.S. Code) (summary order) (collecting cases). Because Plaintiff may not proceed under 18 U.S.C. §§ 1344 or 1348, his attempt to invoke this Court's federal question jurisdiction is unavailing.

Moreover, there is nothing in Plaintiff's complaint which would indicate the Court may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332. While Plaintiff's request for $10,000,000 relief is greater than the statutory amount in controversy requirement, *see* Dkt. No. 9 at 4; 28 U.S.C. § 1332(a), the Defendant's listed address is also within the state of New York, therefore, Plaintiff has failed to establish diversity between the parties. *See generally*, *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) ("28 U.S.C. § 1332 requires complete diversity between all plaintiffs and all defendants . . . ."); *see also*, *e.g.*, *Rashid v. Sufyan*, No. 1:16-CV-1094 (FJS/DJS), 2016 WL 7077082, at *3 (N.D.N.Y. Nov. 4, 2016) ("For diversity jurisdiction purposes, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: (1) physical presence in a state and (2) the intent to make the state a home.") (internal quotations and citations omitted), *report and recommendation adopted*, 2016 WL 7053412 (N.D.N.Y. Dec. 5, 2016).

In sum, because Plaintiff has failed to establish this Court's subject matter jurisdiction through either federal question jurisdiction or diversity jurisdiction, the undersigned recommends dismissal of Plaintiff's amended complaint in its entirety. Because the Court lacks subject matter

jurisdiction, the undersigned must recommend dismissing the action without prejudice.

*Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) (Summary Order); *see also Humphrey*

*v. Syracuse Police Dep't*, 758 F. App'x 205, 206-07 (2d Cir. 2019) (Summary Order)

(explaining, where a court dismisses a complaint for lack of subject matter jurisdiction, the court

does "not have the power to reach the merits and dismiss the claims against the defendants for

failure to state a claim, or to eventually dismiss the complaint with prejudice for failure to file a

proposed amended complaint.") (citing *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47,

54-55 (2d Cir. 2016)).

The Court advises Plaintiff that should he be permitted to amend his complaint, any

amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal

Rules of Civil Procedure.  Any such amended pleading should specifically identify the legal

theory or theories that form the basis for his claim.  Plaintiff is cautioned that no portion of his

prior complaints shall be incorporated into any amended pleading by reference.  Any amended

complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the

Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the

Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.

Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 3) is

**GRANTED**, and it is

**RECOMMENDED** that Plaintiff's amended complaint be **DISMISSED** without

prejudice; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]   Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: January 27, 2026
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2024 WL 4870495

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)

|

Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

#### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

---

[1] The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2] Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

#### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

 **\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]    Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]    Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of character [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

**\*4**  Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga District Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts[5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5]    Plaintiff did not provide any transcripts.

## C. Discussion [6]

[6]    As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

2024 WL 4870495

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction.[7]

[7]    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge"[8] such claims would be barred by judicial immunity.

[8]    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.'" Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he "'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.'" Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.'" Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/ VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. <u>See</u> Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the <u>Heck</u> issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " <u>Barr v. Abrams</u>, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." <u>Hill v. City of New York</u>, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." <u>Flagler v. Trainor</u>, 663 F.3d 543, 547 (2d Cir. 2011) (citing <u>Kalina v. Fletcher</u>, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." <u>Simon v. City of New York</u>, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); <u>see</u> also <u>Flagler</u>, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." <u>Bernard v. Cnty. of Suffolk</u>, 356 F.3d 495, 503 (2d Cir. 2004) (citing <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 199-200 (1985)).

<u>Williams v. Atkins</u>, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), <u>report and recommendation adopted</u>, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the <u>Heck</u> barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." <u>Phillips v. New York</u>, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9]    Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. <u>See</u> Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. <u>See, e.g.</u>, 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. <u>See id.</u> § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10] The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 4870495

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger,

County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative

Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)

|

Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

## ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, *14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

**\*2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, *5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, *5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 247901

---

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 19 of 47
Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

2024 WL 1053222

2024 WL 1053222
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William Paul BENNETT, Plaintiff,

v.

NEW YORK STATE THRUWAY AUTHORITY, Joanne M. Mahoney, Mayor Matthew Driscoll,
James Konstalid, John Barr, Frank Multari, Mary Boehm, Carlos Millan, Patrick Hoehn, Kevin Post,
Robert Dressing, Barry Oaksford, Michael Blais, Todd Summerson, and David Naples, Defendants.

6:22-CV-337
|
Signed March 11, 2024

**Attorneys and Law Firms**

WILLIAM PAUL BENNETT, Plaintiff, Pro Se, 1610 North George Street, Rome, NY 13440.

HON. LETITIA A. JAMES, New York State Attorney General, ERIN P. MEAD, ESQ., STACEY A. HAMILTON, ESQ., Ass't Attorneys General, Attorneys for Defendants, The Capitol, Albany, NY 12224.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

## I. INTRODUCTION

**\*1** On April 8, 2022, *pro se* plaintiff William Paul Bennett ("plaintiff"), a New York State Thruway Authority ("NYSTA") employee, filed this action alleging that his employer and fourteen high-ranking or supervisory NYSTA officials violated his civil rights by, *inter alia*, disciplining him under policies and directives related to the COVID-19 pandemic. Dkt. No. 1. Along with his initial complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"), Dkt. No. 2, and to have counsel appointed to assist him, Dkt. No. 4. Thereafter, plaintiff also filed an amended complaint. Dkt. No. 5.

Plaintiff's amended complaint clocks in at 142 pages. It asserts federal claims under various provisions of the U.S. Constitution, the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983, 18 U.S.C. §§ 241, 242, 351(e), 28 U.S.C. § 4101, and related state law. Plaintiff seeks a total of $39,312,655.65 in damages as well as declaratory and injunctive relief.

On June 10, 2022, U.S. Magistrate Judge Miroslav Lovric conducted a review of plaintiff's IFP Application. Dkt. No. 6. There, Judge Lovric noted that plaintiff was still employed by the NYSTA and receiving his regular, biweekly wages. *Id.* Plaintiff also co-owned some real estate with a non-zero fair market value. *Id.* Because his earnings and holdings put him well above the poverty line, Judge Lovric denied plaintiff's IFP Application. *Id.* Judge Lovric also denied plaintiff's motion for counsel. *Id.* However, Judge Lovric gave plaintiff thirty days in which to pay the filing fee. *Id.* Plaintiff promptly did so. Thereafter, summonses were issued, Dkt. No. 10, and all of the named defendants appeared in this action on July 25, 2022, Dkt. No. 20.

On October 31, 2022, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) to dismiss plaintiff's amended complaint. Dkt. Nos. 32, 33. Plaintiff opposed. Dkt. No. 39. The matter was reassigned to this Court on February 16, 2024. Dkt. No. 56.

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 20 of 47
Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)
2024 WL 1053222

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.[1]

[1]    Plaintiff has also filed a number of his own motions: he moved for summary judgment against defendant Boehm, Dkt. No. 40, a declaratory judgment, Dkt. No. 41, summary judgment against defendant Post, Dkt. No. 42, filed a letter motion requesting that defendants' motion to dismiss be rejected, Dkt. No. 47, summary judgment against defendants Naples, Oaksford, and Millan, Dkt. No. 48, and declaratory judgment, Dkt. No. 49. Those motions have been held in abeyance pending a decision on this motion to dismiss. Dkt. No. 46.

## II. **BACKGROUND**

The following facts are taken from plaintiff's amended complaint and its attached exhibits, Dkt. No. 5, and are assumed true for the purpose of assessing defendants' motion to dismiss.

On February 11, 2016, the NYSTA hired plaintiff in the title of General Mechanic / HVAC worker. Am. Compl. at 14.[2] Plaintiff's interview was conducted by defendant Oaksford and non-party Chandler. *Id.* During the interview, plaintiff had "a full beard and mustache." *Id.* Although neither Oaksford nor Chandler mentioned it at the interview, plaintiff was later told by Oaksford that he "would be required to shave for a mandatory respirator fit test." *Id.* Plaintiff alleges that that no maintenance employees besides Chandler "had used a respirator during the preceding ten (10) years." *Id.*

[2]    The amended complaint includes numbered paragraphs, but only as to certain allegations on certain pages. Citations to unnumbered facts are found on the pages corresponding to the CM/ECF header.

**\*2**  Plaintiff submitted a "Request for Reasonable Accommodation," in which he requested that he "be permitted to be excused from shaving and the subsequent fit test as respirators are not typically used by anyone in [his] job description." Am. Compl. at 14. According to plaintiff, "the presence of [his] facial hair was part of [his] firmly held religious beliefs and practices." *Id.* The NYSTA asked for "additional documentation." *Id.* Thereafter, plaintiff's request for a Reasonable Accommodation was granted. *Id.* at 14–15.

A year later, plaintiff received a notice informing him that he would need to re-apply for this Reasonable Accommodation. Am. Compl. at 15. When he asked why this was required, plaintiff "was informed by various NYSTA management and EEOC [Equal Employment Opportunity Commission] personnel that such re-application is to make sure that no change in status existed." *Id.* "NYSTA EEOC personnel instructed [plaintiff] to fill out the appropriate form and to put wording to the effect that there were no changes to the previous annual application." *Id.* Thereafter, plaintiff forwarded the re-application to EEOC. *Id.*

Shortly after mailing away his re-application, plaintiff and his co-workers "were assigned to a training class which was held in the break area" of the maintenance facility. Am. Compl. at 15. Defendant Post was the training class instructor. *Id.* At the end of the training, Post approached plaintiff "to tell [him] that he had seen [plaintiff's] second application for Reasonable Accommodation and that it was incomplete." *Id.* Post told plaintiff he "had to submit new documentation, specifically referring to a letter on Church letterhead from the parish priest." *Id.* Plaintiff responded that he had already followed the EEOC's instructions. *Id.*

At that time, Post "proceeded to raise his voice and chastise [plaintiff] in front of his [fellow co-workers] with words that included 'This isn't a fight you want to take on.' " Am. Compl. at 15. Plaintiff walked away. *Id.* But he did not file a grievance against Post. *Id.* Soon thereafter, plaintiff learned that an NYSTA employee named Chris Dulong "was also involved in disciplinary issues regarding facial hair and fit testing requirements" and was later terminated. *Id.* at 15–16.

Thereafter, plaintiff and non-parties Chandler and Bentley were assigned to a NYSTA facility in Utica. Am. Compl. at 16. At some point, Bentley was injured and unable to work. *Id.* So plaintiff took a "two[-]week period of employment known as 'Out of Title.' " *Id.* During that period, plaintiff learned and performed the duties of a "Maintenance Supervisor I," which is the job title that Bentley held. *Id.*

2024 WL 1053222

While performing in that position, plaintiff attempted to complete a job at a NYSTA facility in Herkimer. Am. Compl. at 16. But there was an issue with scheduling, so plaintiff told defendant Blais that the job would have to be rescheduled. *Id.* Blais "lost his temper" and "started yelling at [plaintiff]," including shouting that plaintiff didn't "care about taking care of matters at his facility." *Id.* Plaintiff "called" Blais on his "demeanor" and Blais "apologize[d] and revert[ed] to a civil tone." *Id*

On April 17, 2020, NYSTA, with the approval of defendants Mahoney, Driscoll, Konstalid, Barr, Multari, Boehm, and Millan, published and distributed a document called "Safety Gram #192." Am. Compl. ¶ 1. This document "is the first official mention of [a] requirement of use of masks or facial coverings and the proper use thereof." *Id.* According to plaintiff, this Safety Gram is a breach of a collective bargaining agreement that applies to him. *Id.* ¶¶ 1, 5, 18. According to plaintiff, one or more of the named defendants violated his civil rights by wrongfully applying this Safety Gram against him. *Id.* ¶¶ 2–4.

**\*3** On or about June of 2020, defendants "established a policy regarding a requirement that all YSTA employees complete a 'Wellness Survey.' " Am. Compl. ¶ 11. Plaintiff alleges that this policy is also a breach of the collective bargaining agreement. *Id.* Plaintiff further alleges that he suffered from an unidentified medical condition that made it difficult for him to complete this survey. *Id.* ¶ 13. Plaintiff alleges that defendant Post knew this. *Id.*

On or about July 21, 2020, plaintiff attended a training session at an NYSTA facility in Herkimer. Am. Compl. ¶ 15. The training was conducted by defendant Naples. *Id.* Plaintiff had previously talked with Naples about his Reasonable Accommodation related to his beard, so plaintiff approached Naples to tell him that he believed that Safety Gram #192 violated the collective bargaining agreement and his civil rights. *Id.* Plaintiff alleges that Naples "failed to act" on this verbal; *i.e.,* "non-written" request for a Reasonable Accommodation. *Id.*

On September 30, 2020, defendant Post issued a Memorandum to NYSTA employees about the then-ongoing COVID-19 pandemic. Ex. 7 to Am. Compl. at 88; Am. Compl. ¶ 51. Among other things, this Memorandum required all employees to wear masks indoors in "all public / common areas." *Id.* This Memorandum cautioned that "blatant disregard for the protocols will be addressed appropriately." *Id.*

On October 1, 2020, plaintiff was using a urinal in the men's bathroom when defendant Blais entered the room and ordered plaintiff "to put a mask on." Am. Compl. ¶ 17. Plaintiff responded to Blais that he had two doctor's notes that allowed him "to not wear a mask as long as [he] was social distancing." *Id.* Defendant Blais reported this interaction to his supervisor, who in turn reported it to defendant Post. *Id.* ¶¶ 27, 31.

Several hours later, the NYSTA issued to plaintiff a Job Counseling Memo ("JCM") based on his failure to comply with the NYSTA safety policies and his failure to follow supervisory directives. Ex. 4 to Am. Compl. at 77; Am. Compl. ¶¶ 35, 37. The JCM warned plaintiff that "[s]imilar problems in the future may lead to an Unsatisfactory Performance Rating and/or disciplinary action." *Id.*

Later that day, plaintiff contacted defendant Naples, the EEOC official at the NYSTA, to tell him about what had happened in the bathroom and the JCM he had received. Am. Compl. ¶ 57. Naples "conceded that he should have done something with the information he received [from plaintiff] in July" and "instructed [plaintiff] to file a written request for a Reasonable Accommodation." *Id.*

On October 2, 2020, plaintiff submitted to the NYSTA a Request for a Reasonable Accommodation. Ex. 2 to Defs.' Mem., Dkt. No. 33-2.[3] This request sought to "not be required to wear a face covering when working alone or in areas where social distancing can be maintained." *Id.*

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 22 of 47
Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)
2024 WL 1053222

3    The Court is reluctant to consider this kind of extraneous material on a motion to dismiss, but the cited material—in particular, the date and content of this document—are integral to plaintiff's claims. Notably, the substance of this document appears in the pleading, too. Am. Compl. ¶ 17.

Plaintiff supported this request with a doctor's note that says he "has difficulty wearing the mask all the time" and "it is okay not to wear the mask if he is alone or working separately while adhering to social distancing and CDC guidelines." Ex. 3 to Defs.' Mem., Dkt. No. 33-3. A few days later, plaintiff sent to various named defendants an e-mail complaint about the October 1 JCM. Am. Compl. ¶ 59.

**\*4** On October 15, 2020, the NYSTA responded to plaintiff's Request for a Reasonable Accommodation. Compl. at 95. The letter explained that NYSTA would provide him with the following accommodations:

-You will be issued extra facemasks at the start of your day. You should adhere to the directive on face coverings as follows: "a face covering must be carried on your person at all times while on Authority property and worn when social distancing (i.e., less than 6 feet distance cannot be achieved." You are permitted to remove your facemask as needed for medical reasons provided that you adhere to the above referenced policy and/or supervisor's directive. Please not that when in common areas (such as rest rooms, hallways, etc.) or approaching areas where employees may be gathered, masks are required to be worn.

Am. Compl. at 95.

On October 29, 2020, plaintiff received another JCM based on a "pattern of insubordination and disregard for safety procedures." Am. Compl. at 90; Am. Compl. ¶ 61. According to this JCM, plaintiff had violated COVID-19 safety directives on October 15 and again on October 29. *Id.* During the job counseling meeting on this second JCM, plaintiff alleges that defendant Oaksford told him that he "did not care if" plaintiff "had a Reasonable Accommodation," and that if he was unhappy about following orders he could grieve it through the union later. Am. Compl. ¶ 63. Various defendants signed the second JCM on November 16, 2020. *Id.* ¶¶ 67, 69, 71, 73, 75.

On December 7, 2020, plaintiff received a third JCM. Am. Compl. at 97. This disciplinary memo was issued for plaintiff's "pattern of failure to follow directives and disregard for safety protocols and procedures." *Id.* ¶ 77. This JCM stated that plaintiff continued to ignore the COVID-19 safety directives that required him to wear a mask in common areas. *Id.* at 97. As before, this JCM warned plaintiff that "[s]imilar problems in the future may lead to an Unsatisfactory Performance Rating and/or disciplinary action." *Id.*

On January 20, 2021, defendant Millan notified plaintiff that he was being charged with misconduct for his repeated violations of the COVID-19 safety policies. Am. Compl. at 103; Am. Compl. ¶ 87. This letter explained that a hearing would be conducted on the charge. *Id.* Thereafter, plaintiff, after consulting with a union representative and hiring his own lawyer, entered into a stipulation in which he agreed to plead guilty to the charges in the January 20, 2021 letter and pay a $610.80 fine. Am. Compl. at 101–102; Am. Compl. ¶¶ 87–94.

On February 8, 2021, defendant Hoehn notified plaintiff that he had received a "Report of Unsatisfactory Performance" for the rating period between February 11, 2020 through February 11, 2021." Am. Compl. at 107. This performance rating was based on the fact that plaintiff had received three JCMs; *i.e.*, he had been repeatedly counseled for his failure to follow the NYSTA's COVID-19 directives. *Id.* As a result of this rating, plaintiff missed out a scheduled pay raise. Am. Compl. ¶ 95. He appealed the determination but the NYSTA affirmed the unsatisfactory rating. Compl. at 112.

On July 29, 2021, plaintiff filed a civil rights complaint with the New York State Division of Human Rights ("DHR") alleging that the NYSTA's denial of his pay raise was the result of sexual harassment, non-compliance with his reasonable accommodation, and retaliation. Ex. 6, Dkt. No. 33-6. The DHR conducted an investigation. *See* Am. Compl. at 12–13.

Case 1:25-cv-01538-AJB-CBF   Document 14   Filed 01/27/26   Page 23 of 47

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

2024 WL 1053222

**\*5** On January 11, 2022, the DHR determined that there was no probable cause to believe that a violation occurred. Ex. 9, Dkt. No. 33-9. Thereafter, the EEOC adopted the DHR's findings and issued plaintiff a so-called "right-to-sue" letter on March 8, 2022. Ex. 10, Dkt. No. 33-10; Am. Compl. at 13.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up). "The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions." *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based.").

"A facial Rule 12(b)(1) motion is one based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Nicholas*, 433 F. Supp. 3d at 586 (cleaned up). "A plaintiff opposing such a motion bears no evidentiary burden." *Id.* "Instead, to resolve a facial Rule 12(b)(1) motion, a district court must determine whether the complaint and its exhibits allege facts that establish subject matter jurisdiction." *Id.* "And to make that determination, a court must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id.*

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Nicholas*, 433 F. Supp. 3d at 586 (quoting *Carter*, 822 F.3d at 57). "In opposition to such a motion, a plaintiff must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Id.* (cleaned up). "If a defendant supports his fact-based Rule 12(b)(1) motion with material and controverted extrinsic evidence, a district court will need to make findings of fact in aid of its decision as to the subject matter jurisdiction." *Id.*

### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV. DISCUSSION

**\*6** As an initial matter, plaintiff is *pro se*. So his filings must be held to less stringent standards. *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has repeatedly warned, documents filed *pro se* "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that [they] suggest[ ]." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 24 of 47
Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)
2024 WL 1053222

Broadly construed, plaintiff's amended complaint alleges that the NYSTA (and the named defendants) violated his civil rights by writing him up in a series of three job counseling memos (called JCMs) that led to formal charges of discipline and, eventually, an unsatisfactory job performance rating.

The amended complaint and a review of the supporting documentation establishes that plaintiff was issued the JCMs for repeatedly failing to wear a cloth face mask or other face covering inside certain NYSTA facilities and designated common areas in violation of the NYSTA's COVID-19 policies.

Plaintiff contends the JCMs were issued in an irregular and/or improper manner and violated a reasonable accommodation he had received based on his medical condition. According to plaintiff's amended complaint, these and other, related actions amounted to discrimination based on his disability, sex, and/or retaliation.

Notably, plaintiff's amended complaint describes two different reasonable accommodations: a medical accommodation he received vis-à-vis the COVID-19 protocols and an earlier, religious accommodation he received shortly after beginning his employment at NYSTA.

In particular, plaintiff alleges that he has a sincere religious belief that requires him to maintain facial hair and/or a beard. Am. Compl. at 14. The pleading alleges that when a supervisor told him he would need to shave his facial hair for a respirator fit test, he sought and received an accommodation that excused him from shaving or from taking the respirator fit test.[4] *Id.*

4    Plaintiff alleges that an NYSTA employee named Chris Dulong "was also involved in disciplinary issues regarding facial hair and fit testing requirements" and was later terminated. Am. Compl. at 15–16. Plaintiff does not allege that he was terminated or disciplined for his facial hair or for the fit testing requirement.

Importantly, however, there is no indication that the events described in the rest of plaintiff's complaint have anything to do with the accommodation that excused him from the facial-hair / fit-test requirements. Even broadly construed, the allegations about this religious accommodation are entirely distinct from the COVID-19 policy requirement to wear non-fitted disposable masks or other cloth face coverings while still maintaining his facial hair.

Wearing a non-fitted, disposable mask—not shaving his facial hair or fit-testing a respirator—is the requirement imposed by the COVID-19 protocol(s) about which plaintiff complains. Thus, because there is no possible religious-liberty claim that might attach to this fact pattern, the Court will not address this issue further. Instead, the rest of this opinion focuses on the reasonable accommodation plaintiff received vis-à-vis the COVID-19 protocols.[5]

5    Even assuming plaintiff intended to assert this kind of claim, any such claim would fail. *See, e.g.*, *Vanwyckhouse v. Tessy Plastics*, 2023 WL 5452819, at *4 (N.D.N.Y. Aug. 24, 2023) (D'Agostino, J.) (rejecting religious discrimination claim based on COVID-19 workplace masking policy).

**\*7** Plaintiff's amended complaint purports to assert federal claims under the ADA, Title VII, the U.S. Constitution, 42 U.S.C. § 1983, 18 U.S.C. §§ 241, 242, 351(e), and 28 U.S.C. § 4101.

### A. The ADA

The ADA is divided into five separate titles: Employment (Title I), Public Services (Title II), Public Accommodations (Title III), Telecommunications (Title IV), and Miscellaneous Provisions (Title V). *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 169 (2d Cir. 2013).

The first three titles are the big ones. Together, they work to "forbid[ ] discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I ...; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 508, 516–17 (2004).

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 25 of 47
Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)
2024 WL 1053222

But Title V often comes up in litigation, too, since it protects people from retaliation, interference, coercion, or intimidation for engaging in any of the activities protected by the statute itself. 42 U.S.C. § 12203(a)–(b).

Plaintiff's allegations relate to his employment with the NYSTA, a New York State agency. ADA claims against a public employer implicate Title I and Title V. *See, e.g.*, *Mary Jo C.*, 707 F.3d at 171 (limiting discrimination claims by public employees to Title I); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 410 (E.D.N.Y. 2010) (noting that Title V concerns retaliation).

The problem for plaintiff is that the Eleventh Amendment shields New York State (and its constituent agencies, such as the NYSTA) from suit under these provisions of the ADA.

This is because "state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." *Jackson v. Battaglia*, 63 F. Supp. 2d 214, 219–20 (N.D.N.Y. 2014) (citation omitted).

With respect to these ADA claims in particular, "Congress has never abrogated New York's sovereign immunity from claims under Title I and V of the ADA and New York has never waived it." *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014).

This immunity extends to "state officials at those agencies working on behalf of the state (*i.e.*, in their official capacities), *Emmons*, 715 F. Supp. 2d at 406, and will bar a plaintiff's claim "regardless of the type of relief sought," *Morales v. New York*, 22 F. Supp. 3d 256, 258 (S.D.N.Y. 2014). Consequently, ADA claims asserted against New York State, its agencies, or its officials under Title I or Title V are barred by the Eleventh Amendment. *Davis v. Vt., Dep't of Corr.*, 868 F. Supp. 2d 313, 322 (D. Vt. 2012).

Plaintiff's amended complaint also asserts these claims against high-ranking and/or supervisory NYSTA officials in their personal and official capacities. To the extent that plaintiff alleges these ADA claims against the individual defendants in their *personal* capacities, those claims must be dismissed because neither Title I nor Title V provide for individual liability in the employment context. *See, e.g.*, *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (per curiam).

 **\*8**  Plaintiff's amended complaint also names these individual defendants in their *official* capacities. Under limited circumstances, a plaintiff can pursue an "official-capacity" claim against a public official using a doctrine called *Ex parte Young*, which evades the Eleventh Amendment's bar to suit. *Frantti v. New York*, 2017 WL 922062, at \*5 (N.D.N.Y. Mar. 8, 2017). But the doctrine is a narrow one: the plaintiff must plausibly allege (1) an ongoing violation of federal law; and (2) seek relief that can properly be characterized as forward-looking; *i.e.*, prospective. *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 333 (E.D.N.Y. 2014).

The problem here is that even broadly construed, the amended complaint describes, at most, completed violations of the ADA. Plaintiff filed this action in April of 2022, but the most recent significant event described with any detail in his amended complaint is the February 8, 2021 "unsatisfactory" rating that caused plaintiff to miss out on a promotion or pay raise. *See, e.g.*, Am. Compl. ¶ 95. And as of this writing, the State has rescinded the relevant COVID-19 protocols, so there is no existing NYTSA policy (that caused him these specific harms) which could be enjoined.

Thus, to the extent plaintiff has asserted claims under Title I or Title V of the ADA against NYSTA or against the named individual defendants in either their official or personal capacities, those claims must be dismissed as barred by sovereign immunity. [6]

---

[6]    This is a Rule 12(b)(1) dismissal. *Morales*, 22 F. Supp. 3d at 268 ("A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction.").

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 26 of 47

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

2024 WL 1053222

## B. The Rehabilitation Act [7]

[7] If one or more of plaintiff's ADA claims might have proved viable under *Ex parte Young*, they would still fail for the reasons explained in this discussion of the Rehabilitation Act.

The Rehabilitation Act is a body of federal disability law that is available to plaintiff. Although the amended complaint does not reference this statute, the Rehabilitation Act of 1973 provides an avenue for possible relief against a state employer. *Quadir*, 39 F. Supp. 3d at 537 (construing *pro se* complaint as raising disability-related claims under the Rehabilitation Act).

New York has waived sovereign immunity on these claims. *Quadir*, 39 F. Supp. 3d at 537. "Like the ADA, the Rehabilitation Act prohibits disability-based discrimination, but it applies specifically to government agencies and other recipients of federal funds." *Frantti v. New York*, 414 F. Supp. 3d 257, 285 (N.D.N.Y. 2019) (citation omitted).

"[T]he Rehabilitation Act imports the discrimination standards of Title I of the ADA and the retaliation standards of Title V." *Quadir*, 39 F. Supp. 3d at 537; *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 390 (E.D.N.Y. 2016) ("Although its terms are broadly drawn, the Rehabilitation Act incorporates the standards of the [ADA].").

As an initial matter, however, any Rehabilitation Act claims against the individual defendants—whether in their personal capacities or their official ones—must be dismissed. *Frantti*, 2017 WL 922062, at *4 (collecting cases dismissing these claims as redundant where claims could proceed directly against the state entity-employer). Instead, these claims must be asserted directly against plaintiff's employer: the NYSTA.

### 1. Discrimination & Accommodation

To make out a *prima facie* claim of employment discrimination against the NYSTA under the Rehabilitation Act, a plaintiff must allege (1) his employer is subject to the Act; (2) he was disabled within the meaning of the Act; (3) he was qualified to perform the essential functions of his job, with or without a reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Larnard v. McDonough*, 578 F. Supp. 3d 371, 382 (W.D.N.Y. 2022). A failure-to-accommodate claim works much the same way, but just substitutes the fourth element with the question of whether the employer has refused to make a reasonable accommodation. *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020).

**\*9** The Act borrows its definition of "disability" from the ADA. *Larnard*, 578 F. Supp. 3d at 383. The ADA defines a "disability" as any "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). [8] Still, though, "[n]ot every impairment is a 'disability' within the meaning of the ADA." *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005). Instead, there are two requirements: (1) the impairment must limit a "major life activity" and (2) the limitation must be "substantial." *Id.*

[8] An alternative way to satisfy the ADA's definition of "disability" is with a showing that the plaintiff was "regarded as" having a disability. 42 U.S.C. § 12102(1)(C). This provision sweeps more broadly than the principal definition of a disability: it extends to conduct related to any "actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3)(A).

As to the first requirement, major life activities include core physical functions like walking, standing, lifting, and other common activities such as reading, concentrating, and working. 42 U.S.C. § 12102(2)(A). As to the second, an impairment qualifies as a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii).

In 2008, Congress amended the ADA "to make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Woolf*, 949 F.3d at 94. Even so, "[n]ot every impairment that affects an individual's major life activities is a *substantially* limiting impairment." *B.C. v. Mt. Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016) (cleaned up). As the

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

2024 WL 1053222

Circuit has explained, "in assessing whether a plaintiff has a disability, [courts] have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities." *Id.*

Upon review, plaintiff has not plausibly alleged that he suffered from any disability, or was regarded as having or suffering from a disability, under the Rehabilitation Act. In fact, a liberal reading of plaintiff's amended complaint does not even permit the inference that he was "disabled" at all.

Plaintiff repeatedly points out that he received doctor's notes from "two licensed physicians," but these notes do not relieve a plaintiff, even a *pro se* one, from the need to plausibly allege facts tending to establish a qualifying disability. That is especially so where, as here, the doctor's notes do not identify any particular disability.

Instead, these notes only say that plaintiff was allowed "to not wear a mask as long as [he] was social distancing." Am. Compl. ¶ 17; *see also* Pl.'s Opp'n, Dkt. No. 39 at 3. In his opposition, plaintiff contends that he also suffers from high blood pressure. Pl.'s Opp'n at 11. But the mere fact of a diagnosis is not enough to establish a qualifying disability, either. *Weiss v. Cnty. of Suffolk*, 416 F. Supp. 3d 208, 214 (E.D.N.Y. 2018) ("[N]ot every impairment is a disability.").

To plausibly allege a disability-discrimination claim, the plaintiff needs to allege facts tending to show that he was substantially limited in his ability to perform a major life activity, or that his employer mistakenly regarded him as being so limited in one or more of those areas. *See, e.g.*, *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521–22 (1999) (explaining contours of the "regarded as" provision). [9]

<hr>

[9]     On a motion to dismiss, the elements of a plaintiff's *prima facie* case are not treated as an evidentiary burden but are useful as "an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Sosa v. N.Y. City Dep't of Educ.*, 368 F. Supp. 3d 489, 495 (E.D.N.Y. 2019) (citation omitted).

 **\*10**  Plaintiff has not done so. Other than noting that his accommodation request involved the provision of extra personal protective equipment ("PPE") because he suffers from a "sporadic runny nose," plaintiff has not alleged that he suffered limitations in his ability to work his job at the NYSTA at all. Pl.'s Opp'n at 3.

Notably, plaintiff's claim(s) hinge upon the allegation he was subjected to COVID-19 workplace protocols that, both on its face and as applied, affected the other employees in his workplace, too. This is true of both the Safety Gram and the Wellness Survey requirements.

This kind of fact pattern; *i.e.*, mistreatment based on a broadly applicable policy, is ordinarily insufficient to raise a plausible discrimination claim. *See, e.g.*, *Niles v. N.Y. City Human Res. Admin.*, 2024 WL 496345, at *6 (E.D.N.Y. Feb. 8, 2024); (finding same); *Newell v. State Univ. of N.Y. Westchester Cmty. Coll.*, 2023 WL 4082030, at *4 (S.D.N.Y. June 20, 2023) (same).

In short, plaintiff has not plausibly alleged a disability-discrimination claim under the Act. *Kosiba v. Catholic Health Sys.*, 2022 WL 21784010, at *7 (E.D.N.Y. Nov. 18, 2022) (Report & Recommendation) (finding same where plaintiff's ADA claims were based on an objection to workplace masking policy imposed during COVID-19 pandemic).

### 2. Hostile Work Environment

"Because the ADA echoes and expressly refer to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—it follows that disabled Americans should be able to assert hostile work environment claims under the ADA." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (cleaned up); *Kelly*, 200 F. Supp. 3d at 399 (assuming that a hostile work environment was actionable under the Rehabilitation Act).

To make out a hostile work environment claim, a plaintiff must plausibly allege that (1) the harassment was sufficiently severe or pervasive to alter the conditions of his employment; and (2) a specific basis exists for imputing the objectionable conduct

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 28 of 47

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

2024 WL 1053222

to the employer." *Fox*, 918 F.3d at 74. "Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.* (cleaned up).

"A plaintiff alleging a hostile work environment claim, therefore, must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Fox*, 918 F.3d at 74.

Upon review, this claim fails because plaintiff has not plausibly alleged that he suffered from a disability, which is a prerequisite to stating a hostile-work-environment claim in the disability context. *Kelly*, 200 F. Supp. 3d at 399–400. Even assuming otherwise, this claim would still fail. To be sure, plaintiff *subjectively* believed his working conditions to be hostile. *See, e.g.*, Dkt. No. 39 at 12 ("The assault took place while the Plaintiff was actively using the urinal, which, in the mind of the Plaintiff, makes the assault sexual in nature."). But subjective beliefs are not enough. In short, plaintiff has not plausibly alleged that, individually or collectively, the conditions described in the amended complaint might be considered *objectively* severe or pervasive.

### 3. Retaliation

**\*11** The Rehabilitation Act prohibits retaliation against employees for their opposition to practices made unlawful by the Act. *Kelly*, 200 F. Supp. 3d at 402. To make out a *prima facie* case of retaliation, a plaintiff must show that (1) he engaged in an activity protected by the Act; (2) the employer was aware of this activity; (3) the employer took adverse action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015); *Zuro v. Town of Darien*, 432 F. Supp. 3d 116, 126 (D. Conn. 2020).

Upon review, plaintiff's retaliation claim or claims must be dismissed. "It is well established that seeking a reasonable accommodation for a disability constitutes protected activity." *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 129 (E.D.N.Y. 2018) (cleaned up). And even if the disability at issue is not one within the meaning of the Rehabilitation Act, an employee's request for an accommodation can still qualify as protected activity if it is made in good faith. *Id.*

In addition, the three JCMs, the formal disciplinary charges, and the unsatisfactory job performance rating (that caused plaintiff to miss out on a regularly scheduled promotion) qualify as "adverse actions," at least for the purpose of a motion to dismiss. [10]

[10]    However, the myriad other slights identified by plaintiff do not qualify. *See, e.g.*, *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 f.3d 556, 568–72 (2d Cir. 2011) (holding that investigatory sessions, counseling, threats of termination, hostile behavior during meetings, being made to come to work on a day off under false pretenses, and being switched to a night shift did not qualify).

Even so, plaintiff has not plausibly alleged causation between any of his conduct and one or more of these events. "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky*, 921 F.3d at 353 (cleaned up).

There are two, related reasons that plaintiff has not plausibly established causation. First, plaintiff's amended complaint alleges that the mask policy and the wellness survey implemented by the NYSTA applied equally to his co-workers. Second, the accommodation that plaintiff received on this topic did not exempt him from mask wearing.

Instead, the NYSTA provisioned him extra masks, required them to be carried on his person at all times, and stated that they must be *worn* in common areas and when social distancing could not be achieved. This accommodation language even lines up with the language from plaintiff's doctor's notes. The amended complaint's allegations, taken at face value, indicate that plaintiff received the three JCMs for repeatedly violating this accommodation language and the COVID-19 policy, not for engaging in "protected activity" under the Rehabilitation Act.

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 29 of 47

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

2024 WL 1053222

Although plaintiff characterizes the incidents in the complaint as *not* actually violating the policy (*e.g.*, when defendant Blais caught him without a mask in the men's bathroom, or when he was written up for not wearing a mask inside a larger garage space), the question of whether employee conduct violated a policy is separate from the question of whether an employee has engaged in any "protected activity" for a retaliation claim. *Cf. Johnson v. Maximus Servs., LLC*, 2023 WL 5612826, at *4 (E.D.N.Y. Aug. 30, 2023) (concluding *pro se* plaintiff could not plausibly allege causation "because she refused to comply with the COVID-19 policy, not because she opposed it").

**\*12**  As other district courts considering similar fact patterns have noted, a plaintiff who is "demonstrably at risk" of being disciplined for legitimate reasons prior to engaging in protected activity cannot "rely solely on temporal proximity" to establish retaliation. *Evans v. N.Y. City Dep't of Educ.*, 2023 WL 8034449, at *8 (S.D.N.Y. Nov. 20, 2023) (concluding same where plaintiff opposed workplace COVID-19 mandates).

### C. Title VII

Title VII "prohibits employment-related discrimination on the basis of race, color, religion, sex, or national origin and retaliation against employees who complain about discrimination." *Tassy v. Buttigieg*, 51 F.4th 521, 529 (2d Cir. 2022) (citation omitted); *see also Bostock v. Clayton County*, 590 U.S. 644, 649 (2020).

Upon review, plaintiff's amended complaint does not plausibly allege that NYSTA's workplace mask requirement, wellness survey requirement, or its enforcement of those COVID-19 policies against him, made any distinction based on one or more of the immutable or other characteristics protected by the statute; *e.g.*, his sex, race, or religion. Nor has plaintiff plausibly alleged that similarly situated individuals outside of one of these protected classes were treated better than him vis-à-vis these COVID-19 policies.

To the extent that plaintiff has attempted to allege a sexual harassment or "assault" claim based on his alleged interaction with defendant Blais, who observed plaintiff not wearing a mask in the men's bathroom and then reported it to a supervisor, that allegation is insufficient to plausibly allege this—or any other—kind of Title VII claim as a matter of law. Dkt. No. 39 at 12 ("The assault took place while the Plaintiff was actively using the urinal, which, in the mind of the Plaintiff, makes the assault sexual in nature.").

### D. U.S. Constitution & 42 U.S.C. § 1983

Plaintiff's amended complaint also asserts claims under several provisions of the U.S. Constitution and 42 U.S.C. § 1983. Am. Compl. at 7. Notably, however, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In other words, § 1983 is just the procedural mechanism used by a plaintiff to maintain a lawsuit based on a violation of a constitutional right. *Id.* Accordingly, plaintiff's allegations under § 1983 and the U.S. Constitution must be considered together. [11]

[11]  Section 1983 claims asserted directly against New York State, the NYSTA, or the individual defendants in their official capacities are subject to dismissal on the basis of Eleventh Amendment immunity for essentially the same reasons explained *supra*. But a § 1983 individual-capacity claim is still available against a state actor for his "personal involvement" in a constitutional harm. So these claims are construed against the individual defendants in their personal capacities.

### 1. Fourth Amendment

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. These restrictions have

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 30 of 47

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)
2024 WL 1053222

been incorporated against the States through the Due Process Clause of the Fourteenth Amendment. *City of Ontario v. Quon*, 60 U.S. 746, 750 (2010); *Mapp v. Ohio*, 367 U.S. 643 (1961).

**\*13** Upon review, any § 1983 claim based on this general body of law must be dismissed. Broadly construed, plaintiff has attempted to assert a § 1983 false imprisonment claim, or perhaps a § 1983 excessive force claim, against Blais, the defendant identified by plaintiff as "confining" him or "assaulting" him.

Plaintiff alleges that on October 1, 2020, he was at a urinal in the men's bathroom when defendant Blais entered the room and ordered plaintiff "to put a mask on." Am. Compl. ¶ 17. Plaintiff responded to Blais that he had two doctor's notes that allowed him "to not wear a mask as long as [he] was social distancing." *Id.* Blais reported this to his supervisor. *Id.* ¶¶ 27, 31.

These allegations do not plausibly establish the kind of "confinement" that would state a § 1983 false imprisonment claim. Elsewhere, plaintiff makes reference to the fact that defendant Blais "assaulted" him by, among other things, "puffing his chest," "rushing" plaintiff, and "raising his voice in an aggressive manner," Am. Compl. ¶ 23, but a review of those allegations lead to the conclusion that they do not state a plausible claim for relief under this general body of federal law, either.

Putting a plaintiff in imminent fear of harm might give rise to one or more state-law claims, which plaintiff may re-file in state court.

### 2. Sixth Amendment

The Sixth Amendment provides in relevant part that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. XI. This restriction has been incorporated against the States through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400 (1965).

Upon review, any § 1983 claim based on this general body of law must be dismissed. Broadly construed, plaintiff alleges that defendants violated this right by generating false or inaccurate JCMs and enforcing discipline against him based on testimony for which he was not present and did not receive an opportunity to challenge in a meaningful way. Pl.'s Opp'n at 15.

The problem with this argument is that, at best, the JCMs are entirely *civil* or *administrative* in nature. The right to confront a witness "face-to-face," *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988), the right to a "meaningful" cross-examination, *Alvarez v. Ercole*, 763 F.3d 223, 229–30 (2d Cir. 2014), and the other rights emanating from the Sixth Amendment's Confrontation Clause do not protect *civil* litigants or those facing purely administrative discipline, even from a public employer. *Turner v. Rogers*, 564 U.S. 431, 441 (2011) ("[T]he Sixth Amendment does not govern civil cases.").

In a civil or administrative setting, the Due Process Clause does protect a much more limited version of these rights, which will be discussed below.

### 3. Bills of Attainder & Ex Post Facto Laws

Plaintiff's amended complaint also references Article I, Section 9, Clause 3 of the U.S. Constitution, which states that "[n]o Bill of Attainder or ex post facto Law shall be passed."

A "bill of attainder" is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Reynolds v. Quiros*, 990 F.3d 286, 295 (2d Cir. 2021) (quoting *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 468 (1977)).

**\*14** But plaintiff has not identified a particular statute or provision that would offend this constitutional provision. Broadly construed, plaintiff appears to allege that the JCMs and the statutory basis on which he received the bad job performance rating violate this restriction.

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 31 of 47

Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

2024 WL 1053222

However, those provisions do not operate as a bill of attainder because, among other things, they preserve the right to administratively appeal (which plaintiff did) and can be challenged in other settings, such as in a state-court petition. In short, there is no indication that the JCMs, the Safety Gram about masking, the Wellness Survey, the formal discipline, or the unsatisfactory rating "fall[ ] within the historical meaning of legislative punishment." *ACORN v. United States*, 618 F.3d 125, 136 (2d Cir. 2010).

The Ex Post Facto Clause applies to government actions that "make[ ] more burdensome the punishment for a crime, after its commission." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001). "A criminal or penal law is ex post facto when it is: (1) retrospective, and (2) more onerous than the law in effect on the date of the offense." *United States v. Ramirez*, 846 F.3d 615, 619 (2d Cir. 2017). But any claim based on this constitutional provision would fail for the same basic reasons that plaintiff's Sixth Amendment challenge has failed: he was not subjected to any *criminal* process.

#### 4. Due Process

Plaintiff's amended complaint has not identified the Due Process Clause of the Fourteenth Amendment, but his complaints about improper procedures and/or discipline might fit under this constitutional rubric.

The Due Process Clause protects procedural and substantive rights. *Page v. Cuomo*, 478 F. Supp. 3d 355, 370 (N.D.N.Y. 2020). Procedural due process requires that "a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

"To assert a violation of procedural due process rights, a plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 225 (E.D.N.Y. 2014) (citation omitted). "Notice and an opportunity to be heard are the hallmarks of due process." *Id.*

Upon review, any procedural due process claim would fail. Assuming that plaintiff enjoyed a state-created interest (whether it is a property right in the pay raise or in a positive performance rating or perhaps a more generalized liberty interest in his good workplace reputation), the amended complaint indicates that he received constitutionally adequate pre-deprivation process.

In particular, plaintiff alleges that he received a written notice that he was being charged with misconduct for repeatedly violating the COVID-19 policies in accordance with the terms of the parties' collective bargaining agreement. Am. Compl. at 103; Am. Compl. ¶ 87. This letter explained that a hearing would be conducted on the charge. *Id.* Thereafter, plaintiff, after consulting with a union representative and hiring his own lawyer, entered into a stipulation in which he agreed to plead guilty to the charges and pay a fine. Am. Compl. at 101–102; Am. Compl. ¶¶ 87–94.

**\*15** The Second Circuit has repeatedly held that this kind of pre-deprivation notice, combined with a grievance process set forth in a collective bargaining agreement, satisfies the demands of procedural due process. *See, e.g.*, *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008). Under those circumstances, a plaintiff can still seek relief in a § 1983 procedural due process claim, but only if he can plausibly "establish that the grievance procedures in a collective bargaining agreement are an inadequate remedy." *Id.* at 129.

Plaintiff has not done so. He has not identified any shortcoming in this contractually defined grievance process that might raise constitutional concerns. Notably, the unsatisfactory job rating that plaintiff received was issued for the one-year period during which he pleaded guilty to these misconduct charges.

To the extent that plaintiff sought to challenge that determination directly, the amended complaint alleges that he *also* had an opportunity to appeal that determination. In fact, his pleading alleges that he pursued an administrative appeal of that bad job rating to the NYSTA.

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 32 of 47
Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)
2024 WL 1053222

Where, as here, the deprivation occurred pursuant to an established state procedure, the state can foresee when the deprivation will occur and is in a position to provide a pre-deprivation hearing. *King v. N.Y. City Emp. Ret. Sys.*, 212 F. Supp. 3d 371, 401 (E.D.N.Y. 2016). Under those circumstances, the mere availability of post-deprivation process will not *necessarily* satisfy due process. *See id.*

Importantly, however, a pre-deprivation hearing is not *always* necessary to pass constitutional muster. There is no indication that this rating system causes the kind of serious or significant deprivation of a state-created interest (*e.g.*, a termination of employment) that would necessarily *require* a further pre-deprivation hearing beyond the notice-and-hearing process that already occurred on the underlying charges of misconduct. [12]

[12]     Under these circumstances, the availability of a post-deprivation procedure, with an Article 78 proceeding in state court being the big one, would be more than sufficient. "Article 78 of the New York Civil Practice law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition," *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 811 (2d Cir. 1996), "provides the mechanism for challenging a specific decision of a state administrative agency," *Campo v. N.Y. City Emp. Ret. Sys.*, 843 F.2d 96, 101 (2d Cir. 1988).

In sum, plaintiff has not plausibly alleged a violation of his procedural due process rights in light of the alleged fact that he (1) received written notice of impending discipline based on the three JCMs; (2) participated in a counseled hearing process on those accusations; (3) did not contest the validity of the JCMs in that setting but rather pleaded guilty; and, as a result (4) later received an unsatisfactory job rating for that time period, which he (5) also administratively appealed. *Cf. Kieffer v. N.Y. State Thruway Auth.*, 522 N.Y.S.2d 747, 749 (3d Dep't 1987) (rejecting due process claim based on unsatisfactory rating).

To the extent plaintiff's amended complaint might be understood to raise a substantive due process claim, it must also be dismissed. Substantive due process protects against government action that is "arbitrary, conscience shocking, or oppressive in a constitutional sense," but not against official conduct that is merely "incorrect or ill-advised." *Page*, 478 F. Supp. 3d at 371 (citation omitted). In other words, "substantive due process rights are violated only by conduct 'so outrageously arbitrary as to constitute a gross abuse of governmental authority.' " *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 237 (E.D.N.Y. 2009) (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). There is no such outrageous conduct alleged here.

### 5. Equal Protection

**\*16**  Plaintiff's amended complaint has not identified the Equal Protection Clause of the Fourteenth Amendment, either. But again, his complaints about improper discipline imposed upon him by his public employer might fit under this constitutional rubric.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This constitutional provision is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "There are a number of common methods for pleading an equal protection claim." *Kisembo v. N.Y. State Office of Children & Family Servs.*, 285 F. Supp. 3d 509, 523 (N.D.N.Y. 2018).

First, "[a] plaintiff could point to a law or policy that 'expressly classifies persons on the basis of race.' " *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 570 (S.D.N.Y. 2013) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 1999)).

Second, "a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner." *City of Oneonta*, 221 F.3d at 337 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886)).

Third, "[a] plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Floyd*, 959 F. Supp. 2d at 570 (citation omitted).

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 33 of 47
Bennett v. New York State Thruway Authority, Not Reported in Fed. Supp. (2024)

2024 WL 1053222

Under any one of these three theories, a plaintiff "must prove purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (cleaned up); *see also Keles v. Davalos*, 642 F. Supp. 3d 339, 366–67 (E.D.N.Y. 2022).

Plaintiff has not done any of that. However, even "[w]here there is no allegation of membership in a protected class, the plaintiff may still prevail on either a 'class of one' or 'selective enforcement' theory." *Brown v. Griffin*, 2019 WL 4688641, at *4 (S.D.N.Y. Sept. 25, 2019).

Pursuant to *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), a plaintiff may assert a "class of one" claim by alleging that "they were intentionally treated different from others similarly situated and that there was no rational basis for this difference in treatment." *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 558 (S.D.N.Y. 2006).

Alternatively, pursuant to *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980), a plaintiff may assert a "selective enforcement" claim by showing that they were treated differently based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 301 (S.D.N.Y. 2013) (citations omitted).

Measured against these theories, there is no indication that plaintiff has a viable § 1983 Equal Protection claim. There is not even a whiff of any class-based animus from any of the named defendants. Nor is there any hint that any of the defendants treated plaintiff differently than his peers based on any constitutionally impermissible criteria.

### E. Other Federal Statutes

Plaintiff's amended complaint also purports to assert claims under 18 U.S.C. §§ 241, 242, 351(e) and 28 U.S.C. § 4101. Am. Compl. at 7. But plaintiff cannot bring claims under those federal statutes because they do not create any causes of action that can be pursued by private plaintiffs.

 **\*17**  First, a private plaintiff cannot pursue a claim under the criminal statutes found in Title 18 of the United States Code. "It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not ... by private complaints." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972). Consequently, the Second Circuit has repeatedly held that there is no private right of action under Title 18 of the U.S. Code. *See, e.g.*, *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (collecting cases).

Second, 28 U.S.C. § 4101 does not create a cause of action, either. This provision contains definitions, including a definition of "defamation," in the context of a statute that allows actions recognizing foreign defamation judgments. "Although the tort of defamation is a well-recognized cause of action under state common law, federal law does not create a general cause of action or provide a basis for federal question jurisdiction for defamation." *Thomas v. Brasher-Cunning ham*, 2020 WL 4284564, at *10 (D. Conn. July 27, 2020) (collecting cases).

### F. State-Law Claims

Broadly construed, plaintiff's amended complaint also asserts various common law tort claims, or perhaps breach of contract claims. Those claims arise under state law. But the basis for jurisdiction in this forum is federal question, since all the parties are from New York.

"Where, as here, a plaintiff's federal claims will be dismissed before trial, a district court should generally decline to exercise supplemental jurisdiction over any state law claims absent exceptional circumstances." *B.A. v. City of Schenectady Sch. Dist.*, 209 F. Supp. 3d 515, 528 (N.D.N.Y. 2016). There are no exceptional circumstances presented in this case. Accordingly, plaintiff's state law claims will be dismissed without prejudice.

#### G. Leave to Amend

The final question is whether plaintiff should be given leave to amend his pleading, which he has already amended once as of right. "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up). Even so, "it is well established that leave to amend a complaint need not be granted where amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

After considering the matter, plaintiff will not be given further leave to amend because the problems with his claims are substantive—they involve an objection to progressive discipline arising from his non-compliance with COVID-19 policies that applied generally to NYSTA employees.

Plaintiff has not plausibly alleged that the discipline he received—which came after notice and a hearing in accordance with his collective bargaining agreement—was incompatible with the reasonable accommodation he received regarding the COVID-19 face mask policy (as opposed to the facial hair or respirator fit test accommodation he had previously received).

Notably, plaintiff might well have a viable state-law claim based on these facts, perhaps for some violation of the collective bargaining agreement or for a breach of some other contractual relationship with his employer. But those are questions for state court. Because plaintiff cannot sustain any cognizable *federal* claims based on this fact pattern, leave to amend those claims would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, leave to amend must be denied.

#### V. CONCLUSION

**\*18** Plaintiff's amended complaint must be dismissed. Liberally construed, he has failed to plausibly allege any cognizable federal claims against any of the named defendants. The Court's decision today does not preclude plaintiff from re-filing his state-law claims in state court.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss (Dkt. No. 32) is GRANTED;

2. Plaintiff's amended complaint is DISMISSED without leave to amend;

3. Plaintiff's federal-law claims are DISMISSED with prejudice; and

4. Plaintiff's state-law claims are DISMISSED without prejudice.

IT IS SO ORDERED.

#### All Citations

Not Reported in Fed. Supp., 2024 WL 1053222

---

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 35 of 47

2025 WL 3640706
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew B. GIDEA, Plaintiff,

v.

OWEGO POLICE DEPARTMENT; Vill. of Owego; Officer Starzek, Owego Police Officer; Officer Parker, Owego Police Officer; Lillian Reardon, Esq., Assistant District Attorney; and Kyle Fleming, Dog Control Officer, Defendants.

3:25-CV-0103 (ECC/ML)
|
Signed December 16, 2025

**Attorneys and Law Firms**

ANDREW B. GIDEA, Plaintiff, Pro Se, 205b South Corn Street, Ithaca, New York 14850.

<u>**ORDER and REPORT-RECOMMENDATION**</u>

MIROSLAV LOVRIC, United States Magistrate Judge

## I. BACKGROUND

### A. Procedural History

 **\*1**  Plaintiff Andrew B. Gidea ("Plaintiff") commenced this civil rights action *pro se* by the filing of a complaint alleging that his rights were violated by Defendants Owego Police Department, Village of Owego, Officer Starzek, Officer Parker, Lillian Reardon, Esq., and Kyle Fleming (collectively "Defendants"). (Dkt. No. 1.) Plaintiff did not pay the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

### B. Complaint

Construed as liberally [1] as possible, the Complaint alleges that Plaintiff's civil rights were violated by Defendants. (*See generally* Dkt. No. 1.)

[1]   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

The Complaint alleges that on September 27, 2024, Defendants Starzek and Parker entered "a dwelling by opening a locked door without a search warrant or probable cause" which included Plaintiff being detained and the seizure of Plaintiff's "emotional support" dog. (Dkt. No. 1 at 5.) Plaintiff asserts that Defendant Reardon was "attempting to hold a hearing [on] January 8, 2025[,] ... without serving process on [ ] Plaintiff." (*Id.*) Plaintiff appears to object to the fact that the hearing was scheduled to be held virtually via Microsoft Teams. (*Id.*)

Plaintiff alleges that he was struck by a car on October 11, 2024, and he has been unable to work since the accident because of the loss of his emotional support animal. (Dkt. No. 1 at 6.) Notwithstanding this allegation, Plaintiff also alleges that "[t]his has been going on since I became a volunteer firefighter in October of 2022." (*Id.*)

Based on these factual allegations, Plaintiff appears to assert the following four claims: (1) a claim of unlawful search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim pursuant to Fed. R. Crim. P. 43; (3) a claim pursuant

to 18 U.S.C. § 1001; and (4) a claim pursuant to 18 U.S.C. § 641. (Dkt. No. 1 at 2.) As relief, Plaintiff seeks $40,000,000.00 in damages, a "restraining order and a contempt of court charge for any party that claims to have a power of attorney over [ ] Plaintiff," and "a writ of execution for the money so ordered." (Dkt. No. 1 at 6.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed IFP is granted. [3]

[2]    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARDS

**\*2**    "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 37 of 47

### A. Claims Against Defendant Owego Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at \*3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at \*2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by* 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).

**\*3** As a result, I recommend that Plaintiff's claims against Defendant Owego Police Department be dismissed because it is not an entity that is amenable to suit.

### B. Claims Against Defendant Village of Owego

"[T]o hold a municipality liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Adams v. City of Syracuse*, 21-CV-0650, 2025 WL 2772081, at \*28 (N.D.N.Y. Sept. 29, 2025) (Nardacci, J.) (internal brackets omitted) (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)). A plaintiff can establish the existence of an official policy or custom through "(1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (internal quotations, citations, and brackets omitted).

Here, Plaintiff essentially complains of one discrete incident during which Defendants Starzek and Parker—who are employed by Defendant Village of Owego as police officers—did not act properly. (Dkt. No. 1 at 4-5.) There is no indication that Plaintiff can assert a policy or custom, which would support municipal liability based on these facts. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at \*5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.); *Wright v. City of Syracuse*, 10-CV-0661, 2014 WL 1293527, at \*15 (N.D.N.Y. Mar. 31, 2014) (Suddaby, J.) ("Isolated acts of municipal employees are typically not sufficient to establish municipal liability."). In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendant Village of Owego.

As a result, I recommend that Plaintiff's claims against Defendant Village of Owego be dismissed for failure to state a claim upon which relief may be granted.

### C. Claims Against Defendant Reardon [4]

[4] Plaintiff does not appear to include any request for prospective injunctive relief. *See Avitabile v. Beach*, 277 F. Supp. 3d 326, 332 (N.D.N.Y. 2017) (Hurd, J.) (citations omitted) (holding that although prosecutorial immunity bars Section 1983 claims for damages, an official-capacity claim for prospective injunctive relief may proceed to remedy an alleged "ongoing violation of federal constitutional law.").

"Prosecutors sued under § 1983 enjoy absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.' " *Joyner v. Cnty. of Cayuga*, 20-CV-0060, 2020

WL 1904088, at \*9 (N.D.N.Y. Apr. 17, 2020) (D'Agostino, J.) (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, 11-CV-0316, 2012 WL 2569085, at \*5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, 00-CV-3626, 2000 WL 1335865, at \*2 (S.D.N.Y. Sept. 15, 2000)). Immunity even extends to "the falsification of evidence and the coercion of witnesses[;]" "the knowing use of perjured testimony[;]" "the deliberate withholding of exculpatory information[;]" the "making [of] false or defamatory statements in judicial proceedings[;]" and the "conspiring to present false evidence at a criminal trial[.]" *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)); *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976); *Burns v. Reed*, 500 U.S. 478, 490 (1991); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

 **\*4**  The Complaint appears to allege that Defendant Reardon, as Assistant District Attorney, was scheduled to participate in a virtual hearing conducted by the Village of Owego Court and Plaintiff believes that the hearing should be held in-person. (Dkt. No. 1 at 4-5.) Based on these allegations, Defendant Reardon is entitled to prosecutorial immunity for the actions she takes in her role as prosecutor. *See Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases) ("It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983.").

To the extent that Plaintiff attempts to assert claims against Defendant Reardon in her official capacity, as an employee of the Tioga County District Attorney's Office, those claims are subject to dismissal pursuant to the Eleventh Amendment. *See D'Alessandro v. City of New York,* 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at \*5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment.").

As a result, I recommend that Plaintiff's claims against Defendant Reardon be dismissed based on the doctrine of prosecutorial and sovereign immunity.

### D. Claims Against Defendant Fleming

A careful review of the Complaint reveals that Defendant Fleming is listed in the caption and mentioned in the list of defendants. (Dkt. No. 1 at 1, 5.) However, the Complaint fails to allege any action or inaction on behalf of Defendant Fleming. (*See generally* Dkt. No. 1.)

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) (Khan, J.) (citing *Gonzalez v. City of New York*, 97-CV-2246, 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, 96-CV-3895, 1998 WL 118169, at \*1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

As a result, I recommend that Plaintiff's claims against Defendant Fleming be dismissed for failure to state a claim upon which relief may be granted.

### E. Claims Against Defendants Starzek and Parker

#### 1. Claims Pursuant to 18 United States Code

To the extent that Plaintiff attempts to assert claims under 18 U.S.C. §§ 1001 and 641, I recommend that they be dismissed because they do not create any causes of action that can be pursued by private plaintiffs.

"[A] private plaintiff cannot pursue a claim under the criminal statutes found in Title 18 of the United States Code." *Bennett v. New York State Thruway Auth.*, 22-CV-0337, 2024 WL 1053222, at *17 (N.D.N.Y. Mar. 11, 2024) (Hurd, J.). "It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not ... by private complaints." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972). Consequently, the Second Circuit has repeatedly held that there is no private right of action under Title 18 of the U.S. Code. *See, e.g., Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (collecting cases); *Allen v. FMR LLC*, 23-CV-0031, 2023 WL 142903, at *2 (D. Ariz. Jan. 10, 2023) (dismissing the plaintiff's claims pursuant to various sections of Title 18 of the United States Code—including 18 U.S.C. § 641—because "these are criminal statutes and do not create any private right of action.").

### 2. Claims Pursuant to the Federal Rules of Criminal Procedure

**\*5**  Moreover, Plaintiff's claim alleging that Defendants violated the Federal Rules of Criminal Procedure is also incognizable because "rules governing procedure in the federal courts do not give rise to private causes of action." *Good v. Khosrowshahi*, 296 F. App'x 676, 680 (10th Cir. 2008); *see Jenkins v. Raytheon Tech. Corp.*, 21-CV-0406, 2023 WL 2346576, at *6 (D. Conn. Mar. 3, 2023) (citing *Rogers v. Furlow*, 729 F. Supp. 657, 660 (D. Minn. 1989)) (dismissing the plaintiff's claims pursuant to the Federal Rules of Criminal Procedure as "improper" and noting that "the federal procedural rules [do not] create substantive rights."); *Bronnenberg v. Eggar*, 19-CV-0021, 2019 WL 13260183, at *3 (D. Wyo. Feb. 25, 2019) (collecting cases) (dismissing the plaintiff's "claims that the defendants violated certain rules of criminal procedure [because those claims] are not viable causes of action in this civil lawsuit.").

As a result, I recommend that Plaintiff's claims pursuant to Fed. R. Crim. P. 43 be dismissed.

### 3. Claims Pursuant to the Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states and, relevant here, municipalities such as" the Village of Owego. *Tsinberg v. City of New York*, 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010)). It "applies in the civil context as well" as the criminal. *Sodal v. Cook Cnty.*, 506 U.S. 56, 57 (1992) (collecting cases).

"In analyzing a claim for unlawful search and seizure under the Fourth Amendment, courts look to the reasonableness of the search when determining whether a search violated a plaintiff's constitutional rights." *Hatcher v. City of New York*, 15-CV-7500, 2018 WL 1583036, at *7 (S.D.N.Y. Mar. 27, 2018) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968) ("[T]he Constitution forbids ... not all searches and seizures, but unreasonable searches and seizures")).

Here, the Complaint sets forth no facts related to the search. For example, the Complaint fails to identify whose "dwelling" was searched, when the search occurred, what led to the search, whether the search preceded an arrest or whether the arrest was based on the search. (*See generally* Dkt. No. 1.) Hence, the undersigned has "no basis upon which to analyze the reasonableness of the search or whether one of the exceptions to the Fourth Amendment's warrant requirement apply to the search at issue." *Besley v. Borden*, 21-CV-6754, 2022 WL 1128556, at *3 (W.D.N.Y. Apr. 15, 2022). One exception is a search incident to an arrest. *Alexander v. City of New York*, 17-CV-3170, 2019 WL 5887300, at * 5 (S.D.N.Y. Nov. 8, 2019) (citing *United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017)) ("While a search typically requires a warrant to be reasonable, the search incident to arrest doctrine is an exception to the warrant requirement of the Fourth Amendment."); *see also United States v. DeJesus*, 538

F. Supp. 3d 382, 389 (S.D.N.Y. 2021) (citing *Samson v. California*, 547 U.S. 843, 848-49 (2006)) ("One of the 'specifically and well-delineated exceptions' pertains to persons who have been paroled from a sentence of imprisonment and who, as a condition of such parole, have been required to submit their person or property to search without a search warrant. Parolees, like probationers, have significant[ly] diminished expectation of privacy."). "Without knowing any of the circumstances of the search, the Court simply cannot analyze either whether the search without a warrant was unreasonable or whether the search was executed pursuant to one of the exceptions to the Fourth Amendment's warrant requirement." *Besley*, 2022 WL 1128556, at *3.

**\*6** As a result, I recommend that Plaintiff's unreasonable search claim pursuant to the Fourth Amendment and 42 U.S.C. § 1983 be dismissed for failure to state a claim upon which relief may be granted.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

5    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

In deference to plaintiff's pro se status, and because a more detailed pleading could potentially cure the defects identified against Defendants (1) Village of Owego, Starzek, Parker, and Fleming, and (2) Reardon in her individual capacity,[6] the undersigned recommends dismissing Plaintiff's claims without prejudice and with leave to amend. However, the issue with Plaintiff's claims against Defendant Reardon in her official capacity and Defendant Owego Police Department is substantive such that a better pleading will not cure it. As a result, I recommend that Plaintiff's claims against Defendant Reardon in her official capacity and Defendant Owego Police Department be dismissed without leave to replead.

6    It is unlikely that Plaintiff will be able to cure the defects associated with his claims against Defendant Reardon in her individual capacity, which the undersigned recommends be dismissed based on the doctrine of prosecutorial immunity. However, it is possible that with additional or different factual allegations, the doctrine of prosecutorial immunity would not apply to Plaintiff's claims. As a result, the undersigned recommends that Plaintiff's claims be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 41 of 47

**\*7**  **ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** (1) **without prejudice** and **with leave to amend** with respect to Plaintiff's claims against Defendants (a) Village of Owego, Starzek, Parker, and Fleming, and (b) Reardon in her individual capacity, and (2) **without leave to amend** with respect to Plaintiff's claims against Defendant Reardon in her official capacity and Defendant Owego Police Department; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

[7]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[8]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2025 WL 3640706

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 42 of 47
Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)
2016 WL 7077082

2016 WL 7077082
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jamal RASHID, Plaintiff,

v.

Dr. SUFYAN, Defendant.

Civ. No. 1:16-CV-1094(FJS/DJS)
|
Signed 11/04/2016

**Attorneys and Law Firms**

JAMAL RASHID, 15-A-4424, Great Meadow Correctional Facility, Box 51, Comstock, New York 12821, Plaintiff, Pro Se.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed by *pro se* Plaintiff Jamal Rashid, who is presently incarcerated in Great Meadow Correctional Facility. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *In Forma Pauperis* ("IFP").[1] Dkt. No. 5, IFP App. By separate Order, dated November 4, 2016, this Court granted Plaintiff's Application to Proceed IFP. Now, in accordance with 28 U.S.C. § 1915(e), the Court will *sua sponte* review the sufficiency of the Complaint.

[1]  This case was initially brought in September 2016, but was administratively closed due to the fact that Plaintiff's IFP Application was incomplete. Dkt. Nos. 2 & 4. Upon the filing of a complete IFP Application, this matter was reopened and forwarded to the undersigned for review. Dkt. Nos. 5 & 6.

**I. DISCUSSION**

**A. Pleading Requirements**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 43 of 47
Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)
2016 WL 7077082

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678 & 679 (further citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## B. Allegations Contained in Plaintiff's Complaint

**\*2** According to the Complaint, in late-October/early-November 2013, after being choked from behind and losing consciousness, Plaintiff awoke and walked to a hospital for help. Compl. at pp. 4-5. [2] The hospital referred Plaintiff to Defendant Dr. Sufyan for a "shattered orbital floor in his right eye, a broken jaw, and bone fragments in his sinus box." *Id.* Dr. Sufyan performed plastic surgery, consisting of placing metal in Plaintiff's face in three places—eyes, nose, and jaw. *Id.* at p. 4. According to Plaintiff, complications arose wherein his eye bled for a month, screws were falling out, he experienced headaches, and had trouble eating. *Id.* at pp. 4-5. When Plaintiff complained to Dr. Sufyan about a screw that came loose, Dr. Sufyan replied that he should not worry because the brace would come out shortly. *Id.* at p. 5. Medical professionals have advised Plaintiff that the plates were not placed correctly and that the hardware failed. [3] *Id.*

[2]  Citations to the Plaintiff's Complaint are to the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

[3]  Plaintiff mentions that he had retained an attorney to represent him in a malpractice action against Dr. Sufyan, but the attorney apparently stopped representing him at some point. It is not clear whether a malpractice action has been brought by Plaintiff and, if so, what the status of such action is at the present time.

The Court notes that in bringing this action, Plaintiff utilized a *pro forma* complaint typically used by inmates who are seeking to vindicate violations of their constitutional rights pursuant to 42 U.S.C. § 1983. That statute "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) & 42 U.S.C. § 1983); *see also Myers v. Wollowitz*, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). Yet, in the civil cover sheet accompanying his Complaint, Plaintiff indicates that this action is one of personal injury—medical malpractice—and he states that he is bringing this action for "inadequate treatment, negligence (medical misconduct), [and] violation of constitutional right—4[th]." Dkt. No. 1-1, Civil Cover Sheet.

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its own jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of his *pro se* status, and because of the lack of clarity regarding the basis for the Court's jurisdiction, the Court will *sua sponte* assess whether subject matter jurisdiction is present here under both federal question and diversity jurisdiction.

Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)
2016 WL 7077082

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 44 of 47

With regard to the Court's federal question jurisdiction, the Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus I start my analysis with the federal statute by which Plaintiff has invoked in order to remedy violations of his constitutional rights.

First, after reviewing the facts of this case, the Court is unsure as to the precise Constitutional right Plaintiff asserts has been violated. But even more problematic for Plaintiff is the fact that the a party may not be held liable under § 1983 unless it can be established that he has acted under the color of State law. *See, e.g., Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) (noting state action requirement under § 1983); *Wise v. Battistoni*, 1992 WL 280914, at *1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted). Thus, State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.*, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (citation omitted)).

**\*3**  From all reasonable interpretations of the facts contained in the Complaint, it appears that Defendant Dr. Sufyan is a private surgeon who is employed at the Williams Center Plastic Surgery Specialists, which Plaintiff states is located in Latham, New York. According to the Complaint, it appears that Dr. Sufyan provided medical care to Plaintiff prior to the Plaintiff's incarceration. [4] No where in the Complaint does Plaintiff allege that Dr. Sufyan provided medical care for him on behalf of the State, at the request of the State, or that Dr. Sufyan has any connection to the State such that his actions could be categorized as acting under color of State law. Having failed to show that the Defendant acted under color of State law, Plaintiff fails to state a cognizable cause of action against Defendant Sufyan pursuant to 42 U.S.C. § 1983. Thus, the Court recommends that this claim be dismissed from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

[4]  Indeed, despite Plaintiff's current incarcerated status, there is no indication that Plaintiff's interaction with Dr. Sufyan occurred while Plaintiff was in custody. According to the Complaint, Plaintiff began his relationship with Defendant in October/November of 2013 when, after visiting a hospital, Plaintiff was referred to him for treatment. Compl. at p. 4. Although unclear, it seems that Plaintiff's criminal charge may relate to the reason he sought medical care. *Id.* at p. 5 (noting his belief that his retained civil attorney refused to continue the case due to his criminal case, which "started after someone choked [Plaintiff] from behind until [he] was unconcious" after which he went to the hospital). Plaintiff began experiencing negative side effects from his surgery from some unspecified date, possibly in 2014, through the date the Complaint was signed. *Id.* at pp. 4-5 & 7. According to the Department of Corrections and Community Supervision ("DOCCS"), his current incarceration began in November 2015. *See* DOCCS Inmate Information Data, *available at* http://nysdoccslookup.doccs.ny.gov (information obtained for DIN 15-A-4424). While it is not clear whether Plaintiff served any time in prison during the pendency of the criminal proceeding, and it is not clear when his he stopped getting treatment from Dr. Sufyan, the facts set forth in the Complaint suggest that during the relevant time in question, he was not in prison and was able to travel to his various medical appointments by "medicab". Compl. at p. 5.

Because the Plaintiff has not set forth a cognizable claim pursuant to this Court's federal question jurisdiction, the I will consider whether the Court has subject matter jurisdiction under 28 U.S.C. § 1332, the statute conferring diversity jurisdiction. For diversity jurisdiction to exist, the matter in controversy must exceed $75,000 and must be between

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

For diversity jurisdiction purposes, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: "(1) physical presence in a state and (2) the intent to make the state a home." *See Zimak Co. v. Kaplan*, 1999

Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)

2016 WL 7077082

Case 1:25-cv-01538-AJB-CBF    Document 14    Filed 01/27/26    Page 45 of 47

WL 38256, at *2 (S.D.N.Y. Jan. 28, 1999) (quoting 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 102.34[2] (3d ed. 1998)).

In the "Parties" section of the Complaint, Plaintiff provides a Comstock, New York, address for himself. [5] For Defendant Dr. Sufyan, Plaintiff lists a Latham, New York address, which, upon information and belief, is his place of employment. Plaintiff's claim sounds in medical malpractice and negligence and he seeks compensation for his pain and suffering in the amount of $2,100,000. While on its face the amount in controversy well exceeds the $75,000 as required by the statute, because both parties apparently reside in the same State, namely, New York State, and thus diversity jurisdiction is lacking. Accordingly, the Court recommends dismissing Plaintiff's State claims, to the extent he has asserted any, due to a lack of subject matter jurisdiction. [6]

[5]    As previously noted, Rashid is currently incarcerated at the Great Meadow Correctional Facility. Compl. at p. 1.

[6]    This is not a ruling nor finding on the merits of any State claim Plaintiff seeks to pursue against Defendant.

## II. CONCLUSION

**\*4** In light of the above discussion, the undersigned has determined that this Court lacks the subject matter jurisdiction necessary to maintain this action. **WHEREFORE**, it is hereby

**RECOMMENDED**, that this entire action be *sua sponte* dismissed due to lack of subject matter jurisdiction; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7077082

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01538-AJB-CBF     Document 14     Filed 01/27/26     Page 46 of 47

Rashid v. Sufyan, Not Reported in Fed. Supp. (2016)

2016 WL 7053412

2016 WL 7053412
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jamal RASHID, Plaintiff,

v.

Dr. SUFYAN, Plastic Surgeon, Williams Center Plastic Surgeons Specialists, Defendant.

1:16-CV-1094 (FJS/DJS)
|
Signed 12/05/2016

**Attorneys and Law Firms**

JAMAL RASHID, 15-A-4424, Great Meadow Correctional Facility, Box 51, Comstock, New York 12821, Plaintiff pro se.

**ORDER**

SCULLIN, Senior Judge

**\*1** In a Report-Recommendation and Order dated November 4, 2016, Magistrate Judge Stewart, after conducting a review of the sufficiency of Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e), concluded that the Court did not have subject matter jurisdiction over this matter either under federal question jurisdiction or diversity jurisdiction. Therefore, he recommended that the Court dismiss this action. *See* Dkt. No. 8 at 7.

On November 28, 2016, the Court received for filing a document, which the Court has construed as Plaintiff's objections to Magistrate Judge Stewart's recommendation. *See* Dkt. No. 9. In that document, Plaintiff does not address the jurisdictional issue but, rather, discusses his medical problems and acknowledges that he was not incarcerated when Defendant Dr. Sufyan violated his right, under the Eighth Amendment, to have adequate medical care. *See id.* at 1.

Whether Plaintiff is attempting to assert his claim against Defendant Dr. Sufyan under the Fourth Amendment or the Eighth Amendment does not change the fact that Plaintiff's complaint does not contain any allegations from which the Court can draw the reasonable inference that, at the time Defendant Dr. Sufyan treated Plaintiff, he did so "on behalf of the State, at the request of the State, or ... ha[d] any connection to the State such that his actions could be categorized as acting under color of State law." *See* Dkt. No. 8 at 6. Thus, the Court agrees with Magistrate Judge Stewart that Plaintiff has failed to state a cause of action against Defendant Dr. Sufyan pursuant to 42 U.S.C. § 1983; and, therefore, the Court lacks federal question jurisdiction over this matter.

Likewise, there is nothing in Plaintiff's complaint or in his objections to Magistrate Judge Stewart's recommendation that indicates that Plaintiff and Defendant are citizens of different states for purposes of diversity jurisdiction. In fact, as Magistrate Judge Stewart pointed out, it appears that both parties appear to be residents of the State of New York. *See* Dkt. No. 8 at 7. The Court agrees with this assessment and, therefore, concludes that it lacks diversity jurisdiction over this matter.

Accordingly, for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Stewart's November 4, 2016 Report-Recommendation and Order is **ACCEPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED** for lack of subject matter jurisdiction; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7053412

---

**End of Document**                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.